## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**MARCUS LAQUEZ LESTER, #L0783**                                    **PLAINTIFF**

**VERSUS**                                    **CIVIL ACTION NO. 1:16-cv-74-JCG**

**JAQUELINE BANKS, ET AL.**                                    **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (ECF NO. 30), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 32), AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 40)

BEFORE THE COURT are three motions: a Motion for Leave to File Amended Complaint (ECF No. 30) and a Motion for Summary Judgment (ECF No. 32) filed by Plaintiff Marcus Laquez Lester, and a Motion for Summary Judgment (ECF No. 40) filed by Defendants Jacqueline Banks, Hubert Davis, Angie Holloway, Timothy Barnes, Shetica Lockhart, Sarah Jones, Mitchell Taylor, and Lowonda Hayes. Having reviewed the submissions of the parties, the record as a whole, and relevant law, the Court is of the opinion that Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 30) will be DENIED, Plaintiff's Motion for Summary Judgment (ECF No. 32) will be DENIED, and Defendants' Motion for Summary Judgment (ECF No. 40) will be GRANTED. Accordingly, all claims against Defendants will be dismissed with prejudice. Plaintiff will also be assessed a strike because some of his allegations fail to state a cognizable claim.

# I. BACKGROUND

Plaintiff Marcus Laquez Lester, proceeding *pro se* and *in forma pauperis*, filed his Complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983 on February 29, 2016. Plaintiff amended and clarified his allegations on June 29, 2016 during his omnibus hearing.[1] Lester alleges that Defendants Jacqueline Banks, Hubert Davis, Angie Holloway, Timothy Barnes, Shetica Lockhart, Sarah Jones, Mitchell Taylor, and Lowonda Hayes[2] violated his constitutional rights by (1) failing to protect him from other inmates who assaulted him, (2) failing to quickly respond to his request for administrative remedy, (3) failing to adequately classify him among protective custody inmates, (4) failing to enforce and utilize MDOC policies and procedures, and (5) failing to prevent the theft of his property. (ECF No. 1, at 5); (ECF No. 27, at 41). Lester seeks $5,000 in compensatory and punitive damages for physical and mental suffering, restitution for the $131.64 worth of items purchased at canteen that were stolen from him by the inmates who attacked him, and injunctive relief, including transfer to Walnut Grove Correctional Facility ("WGCF") and changes to the way in which protective custody units function. (ECF No. 1, at 5).

The events giving rise to the instant law suit transpired while Plaintiff was incarcerated with the Mississippi Department of Corrections ("MDOC") at South

---

[1] The omnibus hearing was held on June 29, 2016 and functioned as a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). During the omnibus hearing, the Court granted Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 27). The Amended Complaint adds no new allegations as far as the Court can tell, but restates allegations already made in the original Complaint and expands upon the injunctive relief sought.

[2] Plaintiff originally also named Theresa Seabrooks as a Defendant; however, Plaintiff voluntarily dismissed her at the omnibus hearing after defense counsel referenced the suggestion of death as to Ms. Seabrooks (ECF No. 9) filed April 29, 2016.

Mississippi Correctional Institute ("SMCI") in Leakesville, Mississippi. However, Plaintiff filed his Complaint after having been transferred to Central Mississippi Correctional Facility ("CMCF") in Pearl, Mississippi, and now seems to be no longer in MDOC custody.

On August 29, 2015, while housed in Unit 7 at SMCI, a protective custody unit, Lester was allegedly stabbed by another prisoner, Tarakus Lee. Lee and other prisoners also supposedly stole numerous personal items from Lester after attacking him. Lester says that he was attacked because he is homosexual. He says that inmates on his zone told him earlier in the evening of August 29, 2015 that Lee and several other inmates were planning to assault homosexual inmates on the zone. Lester and another inmate Marcus Sims then walked up to Lee and his crew and asked him if this rumor was true and what issues they had with Lester and Sims. Lee and his crew pulled out weapons and attacked Lester and Sims. As a result of the attack, Lester received several stab wounds to his hands and complained of headaches. He received medical care at the SMCI infirmary and was given both pain medication and antibiotics.

Lester states that he had previously been housed at SMCI in Unit 7 and was transferred to Wilkerson County Correctional Facility ("WCCF") in October 2014 by Defendant Hubert Davis, the SMCI Area I Warden, after Lester red-tagged[3] several inmates who had labelled him a "snitch," tried to attack him, and supposedly put a

---

[3] Through the "red tag" or keep-separates system, one inmate can "red tag" another individual, adding that individual to the inmates keep-separates list. Prison officials ensure that other individuals on an inmate's keep-separates list are not housed in the same unit.

hit out on him. He says he was transferred back to SMCI Unit 7 in June 2015 and, upon returning, the same inmates who had put a hit out on him back in 2014 began harassing him. It is not quite clear how they were harassing him, though, because these inmates were elsewhere at SMCI, not in Unit 7.

Lester says that he suspected that these inmates he had previously red-tagged would pay Tarakus Lee to harm him. Lester says that on multiple occasions in June, July, and August of 2015, he witnessed Lee and several other inmates attack other individuals on his unit with makeshift weapons. These inmates were apparently not shaken down for weapons or placed in administrative segregation, and Lester says that these same weapons were used to attack him. Lester also says that he put each of the named Defendants on notice of the fact that he feared for his life. Since the attack, he says he has been regularly insulted and harassed by fellow inmates and corrections officers for his homosexuality. He was transferred to CMCF in November 2015.

## II. <u>DISCUSSION</u>

Plaintiff filed this law suit pursuant to 42 U.S.C. § 1983, which prohibits the deprivation of any individual's constitutional rights under color of state law and provides for both monetary and injunctive relief. Plaintiff names Defendants in both their official and individual capacities.

Before proceeding to the motions for summary judgment, the Court must address Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 30), filed June 30, 2016. Plaintiff's Motion seeks to amend his Complaint to update his

address information and expand upon the injunctive relief sought. (ECF No. 30, at 1). The Court notes that Plaintiff's address has already been updated to the Pearl, Mississippi address listed on the Motion. This request is therefore moot. His request to expand upon the requested injunctive relief he seeks will be DENIED because it does not alter the Court's analysis of the motions for summary judgment. *See supra* § II(B)(b). Accordingly, Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 30) is DENIED.

    A.  <u>Legal Standard</u>

        a.  <u>Summary Judgment</u>

Summary Judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at

323-25. If the movant carries this burden, the burden shifts to the non-moving party to show that summary judgment should not be granted. *Id.* at 324-25.

The Plaintiff may not rest upon mere allegations in his Complaint, but must set forth specific facts showing the existence of a genuine issue for trial. *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). In the absence of any proof, the Court will not assume that Plaintiff "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

b. <u>Prison Litigation Reform Act</u>

Because Plaintiff is a prisoner pursuing a civil action seeking redress from government employees, the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the United States Code), applies and requires that this case be screened.

The PLRA provides that "the Court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see* 28 U.S.C. § 1915(e)(2)(B). Accordingly, the statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

If a prisoner is proceeding *in forma pauperis*, and his complaint is dismissed on grounds that it is frivolous, malicious, or fails to state a claim, the dismissal counts as a strike. 28 U.S.C. § 1915(g). If a prisoner receives three strikes, he may no longer proceed *in forma pauperis* in a civil suit unless he is in imminent danger of serious physical injury. *Id.*

B. <u>Analysis</u>

As an initial matter, the Court notes that (1) Defendants do not assert that Plaintiff failed to exhaust his claims and (2) Defendants do not dispute Plaintiff's factual allegations. Rather, Defendants assert that Plaintiff's allegations fail to overcome Defendants' sovereign and qualified immunity. Accordingly, the record is ripe for summary judgment and the Court proceeds to evaluate the merits of these claims.

a. <u>Sovereign Immunity and Monetary Damages</u>

"The Eleventh Amendment prohibits a private citizen from bringing suit against a state in federal court unless the state consents." *Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014) (quoting *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 980 (5th Cir. 1986)). The State of Mississippi has not waived sovereign immunity for lawsuits filed in federal court. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.") "The Eleventh Amendment also 'generally precludes actions against state officers in their official capacities." *Salinas*, 573 F.

App'x at 372 (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004)). This is because "a suit against a state official in his or her official capacity … is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). However, an exception exists for "suits seeking prospective relief for violations of federal law against state officers in their official capacity." *Id.* (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

Defendants are all employees and officers of MDOC. Because MDOC is an arm of the state, its officers and employees are therefore employees of the state. *Reeves v. King*, No 1:13-cv-492-KS-MTP, 2015 WL 4616865, at *3-4 (S.D. Miss. Feb. 4, 2015). Thus, to the extent that Plaintiff seeks monetary damages against Defendants in their official capacities, these claims are barred by sovereign immunity.

b.  Injunctive Relief Sought

Although the Eleventh Amendment does not bar suit against state officials in their official capacity for prospective injunctive relief, the PLRA limits the availability of prospective injunctive relief. 18 U.S.C. § 3626(a)(1). As described by the Fifth Circuit,

> The Act provides that a district court should not grant prospective relief—defined as "all relief other than compensatory money damages," 18 U.S.C. § 3626(g)(7)—in a prison litigation case "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

*Ruiz v. Johnson*, 178 F.3d 385, 387 (5th Cir. 1999), *abrogated on other grounds by Miller v. French*, 530 U.S. 327 (2000).

Plaintiff's request for significant changes to the way in which protective custody units function is not relief narrowly tailored to correct Defendants' alleged failure to protect him from Lee. "Narrowly drawn injunctive relief under these circumstances would go no further than order the prison system to transfer the Plaintiff to a unit away from [Lee]." *Black v. Colunga*, 656 F. Supp. 2d 625, 633 (E.D. Tex. 2009). But MDOC has already transferred Plaintiff from SMCI to CMCF, and WGCF – the facility to which Plaintiff seeks transfer – was closed in September 2016 for unconstitutional conditions of confinement.[4] Plaintiff's request for injunctive relief regarding his safety became moot upon his transfer to CMCF. *Id.* (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *Cooper v. Sheriff, Lubbock Cty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991)). Defendants are therefore entitled to summary judgment regarding Plaintiff's requests for injunctive relief.

c. Qualified Immunity and Monetary Damages

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Accordingly, a government official is entitled

---

[4] Arielle Dreher, *Walnut Grove Prison is Officially Closed*, Jackson Free Press (Sept. 15, 2016), http://www.jacksonfreepress.com/news/2016/sep/15/walnut-grove-prison-officially-closed/; *Private Prisons*, Mississippi Department of Corrections, http://www.mdoc.ms.gov/Institutions/Pages/Private-Prisons.aspx (last visited Mar. 29, 2017).

to immunity from suit unless (1) a plaintiff has made allegations sufficient to show a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the official's alleged misconduct. *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

> i.   <u>Defendants Banks, Davis, Holloway, Barnes, and Taylor were not deliberately indifferent towards Plaintiff's safety</u>

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other prisoners or prison staff. *Hill v. Thomas,* 326 F. App'x 736, 736 (5th Cir. 2009); *Horton v. Cockrell,* 70 F.3d 397, 400 (5th Cir. 1995). However, not every injury "by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Hill,* 326 F. App'x at 736 (citations omitted).

In order to prevail on a claim that prison officials failed to protect an inmate from harm, the Plaintiff must establish (1) "that he [was] incarcerated under conditions posing a substantial risk of serious harm" and (2) that the jail official's state of mind towards inmate's health or safety was one of "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Proving deliberate indifference requires showing that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Lester asserts that Defendants Banks, Davis, Holloway, Barnes, and Taylor knew that Lester was subjected to a substantial risk of serious harm and

disregarded that risk. He states that he wrote a letter to Jacqueline Banks, the Superintendent of SMCI, to request transfer to WGCF. A copy of a response he received from Defendant Banks on September 18, 2015 is attached to his Motion for Summary Judgment (ECF No. 32-4, at 1); however, it does not appear that the Court has been provided with the letter Lester originally sent to Banks. Lester alleges that his letter stated that he feared for his life because he had witnessed Lee and his associates attack other inmates in his unit.

Lester also filed a grievance through the Administrative Remedy Program[5] ("ARP") at SMCI, which was received August 24, 2015, asking to be transferred because he had [all sic in original] "been into several of altercations while housed on B zone this time all verbal with residents on protective custody." (ECF No. 40-3, at 27-30). In his ARP grievance, Lester stated that "there is proof of growing violence here on P.C." and gave examples [all sic in original]:

- A offender got stabbed in the hallway by 2 offenders on A zone at night June 2015
- Offender Jessie Carl Toomer was housed in B zone cell #401 was forced off the zone due to threats being made on his life June 2015
- Offender Lonnie Simms was forced off B zone cell #306 due to threats made on his life June 2015
- Offender Eric Ward was forced off B zone cell #404 due to threats made on his life 2015 (June)
- Christopher Mardis 162282, Eric Hood L2324 & a unknown name inmates was extorted in forced off B zone July 2015 they live in cells #301, #309, #310

---

[5] The Mississippi Code grants MDOC the authority to adopt an administrative review procedure at each of its correctional facilities. Miss. Code Ann. § 47-5-801.  MDOC has implemented an Administrative Remedy Program through which prisoners may seek formal review of a complaint or grievance relating to any aspect of their incarceration. *See* MDOC Inmate Handbook, Ch. VIII, Administrative Remedy Program. Effective September 19, 2010, the ARP is a two-step process. *See Threadgill v. Moore*, No. 3:10-cv-378-TSL-MTP, 2011 WL 4388832, *3 n.6 (S.D. Miss. July 25, 2011).

- Inmate Eric Ward was assaulted in the dayroom by 3 offenders on B zone July 26, 2015
- Inmate Weatherspoon first name unknown live on B zone cell #309 is being forced off the zone by inmates making threats made on his life August 18, 2015.

*Id.* at 28-29. Hubert Davis received this grievance and responded at the first step of the ARP review; Banks responded at the second step of the ARP review. The first step response, dated October 4, 2015, stated, "Your ARP has been reviewed, the request is being reviewed by the Classification Department. You are housed in a single cell until you can be moved to another facility." *Id.* at 13. The second step response, dated November 13, 2016, stated "In your original grievance you request to be moved to another facility and placed in a PC unit. This was done as you are now housed at CMCF." *Id.* at 4.

Although Lester asserts in his complaint that Lee was targeting homosexuals on the unit, he stated at the omnibus hearing that he suspected Lee was paid to attack Lester by inmates in another unit who believed Lester had previously informed on them, and who Lester red-tagged. It is not clear which motivation Lester ascribes to Lee, but his ARP grievance makes no mention of homosexual inmates being the target of violence. Lester asserts that Davis knew about the threat these red-tagged individuals posed to Lester because Davis must have known that Lester was previously transferred from SMCI. Lester also says Davis must have known that Lee had assaulted other inmates on the zone.

Lester asserts that he wrote to Angie Holloway, the SMCI Area I Associate Warden, stating that he feared for his life and asked to be transferred or placed on

lock down. He says that he told Holloway that he suspected the inmates he had red-tagged would pay Lee to harm him. Lester asserts that he personally told Timothy Barnes, SMCI Area I Interim Deputy Warden, and Lieutenant Mitchell Taylor that he feared for his life and needed to be moved in July and August.

Defendants argue that, with regard to the ARP Lester submitted, it "was not received until August 24, 2015," and because the assault supposedly happened only five days later on August 29, 2015, "Plaintiff cannot demonstrate that any of the named Defendants actually received the grievance prior to his assault." (ECF No. 41, at 9). Additionally, and alternatively, Defendants argue that their actions were "'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Id.* (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

Evidence submitted by Plaintiff suggests that Defendants may have actually received the grievance prior to the assault. The running record in Lester's MDOC file shows an entry dated August 25, 2015 at 07:29 hours by Lowonda Hayes, which noted that Lester "wants to be transferred to Walnut Grove" and that he was informed that "he cannot be moved unless a unit swap occurs and if no red tags are at that facility." (ECF No. 32-6, at 3).

Given that Defendants do not dispute that Lester made these alleged communications, the Court proceeds under the assumption that Lester did, in fact, make the written and verbal complaints alleged, and that Defendants received them. Nonetheless, the Court finds that these allegations fail to create a triable

issue of material fact as to whether Banks, Davis, Holloway, Barnes or Taylor were "deliberately indifferent" to a "substantial risk" of serious harm.

First, the Court finds that Lester's communications to Banks, Davis, Holloway, Barnes, and Taylor did not establish that he was exposed to a substantial risk of harm. The risk of harm he communicated to them was premised upon 1) having witnessed other inmates leave his unit after supposed threats were directed towards them, 2) having witnessed two inmates on his unit get attacked for unspecified reasons, and 3) his unsubstantiated fear that inmates he had red-tagged who lived on another unit at SMCI would pay someone on his unit to attack him. Lester did not indicate to Defendants that these attacks or threats made to other inmates were in any way linked to the threat posed to him by the red-tagged inmates. Moreover, Lester says that Lee attacked him for entirely unrelated reasons – because of his homosexuality; nothing suggests that the attack was foreseeable. *See Brooks v. Brown*, No. 3:10-CV-1886, 2011 WL 2619059, at *5-6 (W.D. La. June 7, 2011), *report and recommendation adopted*, No. 3:10-CV-1886, 2011 WL 2620371 (W.D. La. July 1, 2011).

Second, even assuming arguendo that Lester made these defendants aware of a substantial risk of serious harm, the Court finds that Defendants acted reasonably in response. When viewed in the context of the numerous prior moves that these and other staff at MDOC had arranged for Lester, as well as his protective custody status, it is clear that Defendants attempted to address the threats Lester reported and to keep him safe. *See Longoria v. Texas*, 473 F.3d 586,

594 (5th Cir. 2006) ("We have previously held that responding to an inmate's complaints 'by referring the matter for further investigation' or taking other appropriate administrative action fulfills an official's protective duties under the Eighth Amendment.") (quoting *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004)). Lester, himself, mentioned that he had been transferred from SMCI to WCCF, back to SMCI, and then to CMCF after the assault. The Drill Down Report (ECF No. 40-4) attached to Defendants' Motion for Summary Judgment reflects that Lester was also moved around within these facilities to different zones and beds. He was placed in a single cell at SMCI after the assault until he could be moved to another facility. (ECF No. 40-3, at 13).

Moreover, entries in the running record in his file indicate that transferring him out of SMCI unit 7 was no easy task because he had red-tagged so many other inmates in protective custody units in other facilities. *See* (ECF No. 32-6, at 3-5). He was informed on August 25, 2015 that transferring him would require a unit swap to a facility without inmates he had red-tagged, and after the attack, entries dated September 10, 2015, September 11, 2015, September 14, 2015, and October 28, 2015 indicated the difficulties in effecting a transfer to Mississippi State Penitentiary ("MSP") or CMCF, with one entry at 14:20 hours on October 28, 2015 by Lowonda Hayes stating, "[H]e has so many red-tags at other facilities, I don't know where he would go." *See id.* At most, Lester's allegations establish that Defendants might have been negligent in failing to have him moved from SMCI unit 7 sooner, but "negligent failure to protect an inmate is not tantamount to a constitutional

violation." *Simpson v. Epps*, No. 5:10-CV-15-MTP, 2010 WL 3724546, at *3 (S.D. Miss. Sept. 15, 2010) (citing *Dilworth v. Box*, 53 F.3d 1281 (5th Cir. 1995)); *see also Farmer*, 511 U.S. at 837 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

Finally, though not specifically articulated by Lester, the Court notes that to the extent that Lester asserts a theory of respondeat superior liability against Defendants, no such liability exists under 42 U.S.C. § 1983. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010).

ii.   <u>Defendants Lockhart and Jones were not required to intervene in the assault to protect Lester</u>

Turning to Lester's failure to protect claim against Defendants Shetica Lockhart, the SMCI Shift Commander, and Sarah Jones, a Lieutenant, Lester alleges that Lockhart and Jones were the first officers to respond to the incident and failed to quickly intervene.[6] (ECF No. 1, at 11). Lester says that as soon as he was attacked, Correctional Officer Ruffin (who is not party to the suit) called for backup and, after a minute of scuffling and being chased to the showers and back,[7] Lester was able to retreat to his cell, which Ruffin closed. *Id.* Lester asserts that Lockhart and Jones watched Lee and others attack him without intervening – despite having "OC gas"[8] – until armed K-9 officers arrived 15 minutes later. *Id.*

---

[6] He also stated that six other correctional officers similarly responded but failed to intervene. It is not clear why these officers have not similarly been named in the law suit.

[7] At his omnibus hearing, Lester stated that these events lasted ten minutes.

[8] OC gas is more commonly referred to as pepper spray. The OC stands for oleoresin capsicum.

As an initial matter, Lester's chronological timeline does not make clear that Lester was presently being attacked at the time Lockhart and Jones arrived. It sounds like a few minutes, at most, transpired between when Lee initially attacked him and when he was secured in his own cell. Regardless, "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence." *Longoria*, 473 F.3d at 594; *Black v. Colunga*, 656 F. Supp. 2d 625, 638 (E.D. Tex. 2009). Lester's assertion that Lockhart and Jones were armed with pepper spray is unsubstantiated, but even so, pepper spray provides limited protection against several inmates armed with "sharp objects, iron poles, locks, [and] sticks." (ECF No. 1, at 9). "The officers violated no 'clearly established' law by failing to intervene while unarmed." *Longoria*, 473 F.3d at 594.

      iii.   <u>Lester has no protectable liberty interest in his classification or the classification of other inmates</u>

Lester asserts that Lowonda Hayes, the Case Manager for SMCI Unit 7, maintains each inmate's records and therefore should have reclassified the individuals who attacked him because they are dangerous persons. However, a prisoner has no protectable liberty interest in his classification by prison officials. *Wilkerson v. Stadler*, 329 F.3d 431, 435-36 (5th Cir. 2003). "Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." *Id.* (quoting *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990)). Indeed, "it is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying

prisoners in terms of their custodial status.'" *Id*. (quoting *McCord*, 910 F.2d, at 1250).

Lester's housing assignment appears to be solely the product of MDOC's classification system. *Wilkerson*, 329 F.3d, at 435-36. Accordingly, his claims against Lowonda Hayes – and any other claims challenging his classification – must fail as a matter of law. He similarly may not challenge the classification of his fellow inmates. These allegations will be dismissed for failure to state a claim upon which relief can be granted.

### iv.    Lester's complaints over the response time through the ARP fail to assert a due process violation

Lester asserts that Defendants violated the Fourteenth Amendment's Due Process Clause "by refusing to talk to [him] or respond to [his] letters" and by taking "113 days to respond to the 1st Step" of his ARP grievance. (ECF No. 1, at 15-20). Of course, evidence and numerous other allegations contradict this assertion that Defendants refused to talk to him or respond to his letters, because he has identified numerous responses, however unsatisfactory. Regardless of the specifics of his claim, the failure of jail officials to respond to his grievances does not rise to the level of a constitutional violation.

Plaintiff has no constitutional right to the existence of a grievance procedure and no due process liberty interest in having his grievance resolved to his satisfaction. *Geiger v. Jowers,* 404 F.3d 371, 374-75 (5th Cir. 2005); *Guillory v. Hodge*, No. 2:14-cv-156-MTP, 2015 WL 1968636, at *1 (S.D. Miss. Apr. 30, 2015); *see also Lijadu v. I.N.S.,* 2007 WL 837285, at * 3 (W.D.La. Feb. 21, 2007) ("[D]etainees

'do not have a constitutionally protected right to a grievance procedure' – much less one that complies with their own personal preferences."). Similarly, "violations of prison rules do not alone rise to the level of constitutional violations and, therefore, such claims are not actionable under § 1983." *Scheidel v. Sec'y of Pub. Safety & Corr.*, 561 F. App'x 426, 427 (5th Cir. 2014) (citing *Hernandez v. Estelle,* 788 F.2d 1154, 1158 (5th Cir. 1986)). Accordingly, the Court finds that these allegations should be dismissed for failure to state a claim upon which relief can be granted.

     v.    <u>The theft of Lester's property by other inmates is not a constitutional violation</u>

Lester asserts that Defendants failed to prevent the theft of his property, and he seeks reimbursement for the items allegedly stolen by Lee and the other inmates who attacked him. However, the deprivation of property by state officials – whether negligent or intentional – does not violate the due process clause of the Fourteenth Amendment as long as adequate post-deprivation remedies exist. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The State of Mississippi provides at least three post-seizure remedies, "including actions for conversion, claim and delivery, and replevin, any of which plaintiff can use to recover property he claims was wrongfully taken from him." *Smith v. Woodall*, No. 1:14-cv-294-HSO-RHW, 2015 WL 9808777, at *5 (S.D. Miss. Oct. 28, 2015), *report and recommendation adopted*, 2016 WL 165021 (S.D. Miss. Jan. 14, 2016). Moreover, the MDOC ARP grievance procedure may constitute an adequate post-deprivation remedy, *see Hudson*, at 536 n.15, and the Fifth Circuit has held that "Mississippi's post-deprivation remedies for civil IFP litigants satisfy due process." *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994).

Because these remedies are adequate, Plaintiff cannot state a violation of constitutional due process.

      vi.    <u>Verbal threats and harassment do not rise to the level of a constitutional violation</u>

Lester alleges that several correctional officers (without specifying who) and other inmates harassed him about his sexual orientation. However, claims of verbal insults, threats and derogatory remarks are not cognizable under § 1983. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995); *Patin v. LeBlanc*, No. CIV.A. 11-3071, 2012 WL 3109402, at \*13-14 (E.D. La. May 18, 2012), *report and recommendation adopted,* No. CIV.A. 11-3071, 2012 WL 3109398 (E.D. La. July 31, 2012).

## III. <u>CONCLUSION</u>

The Court has determined that Defendants are each entitled to sovereign immunity and qualified immunity against Plaintiff's claims. Defendants are therefore entitled to summary judgment and Plaintiff's claims will be dismissed with prejudice.

Accordingly, **IT IS HEREBY ORDERED** that *pro se* Plaintiff Marcus Laquez Lester's Motion for Leave to File Amended Complaint (ECF No. 30) is **DENIED**, Plaintiff Marcus Laquez Lester's Motion for Summary Judgment (ECF No. 32) is **DENIED**, and Defendants' Motion for Summary Judgment (ECF No. 40) is **GRANTED**. All claims against Defendants are dismissed with prejudice. Because some of Plaintiff's claims are dismissed for failure to state a claim upon which relief can be granted, he is assessed a strike.

**IT IS FURTHER ORDERED** that the remaining pending motions (ECF No. 31); (ECF No. 33); (ECF No. 34); (ECF No. 38); (ECF No. 42); (ECF No. 45); (ECF No. 46); (ECF No. 48); (ECF No. 49); (ECF No. 50), all filed by Plaintiff, are **DENIED** as moot.

**SO ORDERED AND ADJUDGED**, this the 31st day of March, 2017.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE